IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:24CR39 (RCY) |
| | ) | |
| ANTHONY GEORGE RUGGIERO, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Anthony George Ruggiero's ("Defendant") Motion to Sever Charges pursuant to Federal Rules of Criminal Procedure 8(a) and 14(a) ("Motion to Sever," ECF No. 50). The eleven-count indictment charges the Defendant with multiple offenses arising from alleged conduct involving two victims, Jane Doe 1 and Jane Doe 2. Specifically, the Government has charged the Defendant with six Counts of Coercion and Enticement of Jane Doe 1, and five Counts of Receipt of Child Pornography involving Jane Doe 2. The Defendant argues that the offenses are improperly joined under Rule 8(a) and, alternatively, that severance is warranted under Rule 14(a) to avoid undue prejudice. For the reasons set forth below, the Court denies the Defendant's motion.

**I. FACTUAL BACKGROUND**

The Defendant is charged with six Counts of Coercion and Enticement of a Child ("Coercion Charges") and five Counts of Receipt of Child Pornography ("Receipt Charges").

The Coercion Charges relate to the Defendant's alleged conduct involving Jane Doe 1, a minor from Spain who lived with the Defendant's family pursuant to a foreign-exchange program in or around 2021. *See* Government's Motion in Limine, ECF No. 48 at 2. The alleged sexual relationship occurred between November 2021 and February 2022. *See* Superseding Indictment, ECF No. 32. Jane Doe 1 returned to Spain in March 2022. Gov't Mot. Limine 2. Jane Doe 1

reported this conduct to Spanish authorities, who then investigated her claims by interviewing her and examining her phone.  *Id.*  Pursuant to this investigation, Spanish authorities uncovered sexually explicit communications between Jane Doe 1 and the Defendant.  *Id.*  In or around January 2024, the FBI's Norfolk Field Office received documentation regarding the Defendant's alleged abuse of Jane Doe 1.  *Id.* at 3.  American law enforcement thereafter executed search warrants of the Defendant's social media accounts, which revealed sexually explicit messages between Jane Doe 1 and the Defendant, corroborating Jane Doe 1's statements as well as the Spanish authorities' examination of her cell phone.  *Id.*  Based on the evidence of the Defendant's abuse of Jane Doe 1, law enforcement obtained a search warrant for his residence, and multiple electronic devices were seized from his home.  *Id.*  A forensic examiner analyzed the devices and discovered additional pictures and videos of child pornography depicting a different minor, Jane Doe 2—the victim underlying the Receipt Charges.  *Id.*

The National Center for Missing and Exploited Children confirmed that Jane Doe 2 was under 18 years old at the time the photos and videos were taken.  *Id.*  The Defendant is alleged to have received these images on or about February 22, 2023—approximately one year after the most recent conduct underlying Counts One through Six.  *See* Government's Motion in Limine, ECF No. 49 at 1.

## II. PROCEDURAL POSTURE

The Defendant filed the instant Motion to Sever on June 30, 2025.  Mtn. Sever, ECF No. 50.  On July 7, 2025, the Government filed its Response to Defendant's Motion to Sever.  Resp. Opp'n, ECF No. 56.  The Defendant replied to the Government's Response on July 14, 2025.  Reply, ECF No. 58.  On August 25, 2025, the Court held a hearing on Defendant's Motion to Sever, as well as the Government's Motions in Limine, ECF Nos. 48, 49, and the Defendant's

Motion to Exclude Prior Statements, ECF No. 51. After hearing argument from counsel, the Court deferred ruling on the Motion to Sever. ECF No. 60.

### III. LEGAL STANDARDS

Joinder of criminal offenses is generally permissible under Rule 8(a) so long as, in relevant part, the offenses are of the same or similar character. However, properly joined offenses may require severance if the Defendant demonstrates prejudice that cannot be cured by limiting jury instructions.

#### A. Rule 8(a) Joinder Framework

Federal Rule of Criminal Procedure 8(a) provides for joinder of separate offenses where the offenses are either (1) of the same or similar character; (2) based on the same act or transaction; or (3) are connected with parts of a common scheme or plan. Fed. R. Crim. P. 8(a). As a threshold matter, joinder is the rule rather than the exception: Rule 8(a) is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system. *United States* v. *Blair*, 661 F.3d 755, 768 (4th Cir. 2011) ("To promote judicial efficiency, Rule 8(a) permits very broad joinder of related counts in the same trial.").

Although the Government broadly contends that joinder is proper under all three prongs, only the "same or similar character" standard appears to be supported by the Government's briefing. The Fourth Circuit considers various fact-intensive factors when assessing whether joinder is proper under the "same or similar character" prong such as (1) whether the offenses are charged under the same statute, *see United States* v. *Hawkins*, 776 F.3d 200, 208 (4th Cir. 2015); (2) the temporal proximity between the alleged offenses, *see United States* v. *Taylor*, 218 F. App'x

3

249, 251 (4th Cir. 2007); (3) whether evidence would be mutually admissible, *see id.*; and (4) similarities in modus operandi, *see United States* v. *Acker*, 52 F.3d 509, 513 (4th Cir. 1995).[1]

### B. Rule 14(a) Prejudice Framework

Nonetheless, even if offenses are properly joined, Rule 14(a) permits relief from prejudicial joinder. When moving under Rule 14(a) for separate trials, the defendant "must establish that actual prejudice would result from a joint trial . . . and not merely that a separate trial would offer a better chance of acquittal." *U.S. v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995). Nor is it "enough to simply show that joinder makes for a more difficult defense." *United States* v. *Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984) (internal citation omitted). Prejudice must be alleged with specificity and cannot be speculative. *See U.S. v. Becker*, 585 F.2d 703, 707 (4th Cir. 1978) (describing how "[s]peculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance."). A key consideration when making this determination is whether evidence is mutually admissible for the respective charges. *See U.S. v. Carmichael*, 685 F.2d 903, 910 (4th Cir. 1982) ("[T]he possibility of prejudice is greatly

---

[1] As the Defendant highlights in his Motion to Sever there appears to be a circuit split regarding the "same or similar" analysis. *See* ECF No. 50 at 4–5, n.1. The Eleventh, Seventh and Second Circuits take a broader, categorical approach. *See United States* v. *Hersh*, 297 F.3d 1233, 1242 (11th Cir. 2002) ("We have employed Rule 8(a)'s 'same or similar character' language several times, requiring that the charges be 'similar' in category."); *United States* v. *Berg*, 714 F.3d 490, 495 (7th Cir. 2013) ("The 'same or similar character' requirement is a clear directive to compare the offenses charged for categorical, not evidentiary, similarities.") (citation modified); *United States* v. *Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) ("'Similar' charges include those that are 'somewhat alike,' or those 'having a general likeness' to each other.").

The Ninth Circuit, however, has criticized this approach and opted instead for a relatively narrower, fact-intensive standard. *See United States* v. *Jawara*, 474 F.3d 565 (9th Cir. 2007) ("We consider it appropriate to consider factors such as the elements of the statutory offenses, the temporal proximity of the acts, the likelihood and extent of evidentiary overlap, the physical location of the acts, the modus operandi of the crimes, and the identity of the victims in assessing whether an indictment meets the 'same or similar character' prong of Rule 8(a).").

While the Fourth Circuit has not explicitly adopted either of the aforementioned tests, Fourth Circuit jurisprudence calls for courts to consider most of the same factors enumerated by the Ninth Circuit in *Jawara*. However, the Fourth Circuit has also embraced the idea of categorically grouping offenses that are linked together by logical inference. *See United Sates* v. *Cardwell*, 433 F.3d 378, 386 (4th Cir. 2005) (discussing *United States* v. *Stokes*, 211 F.3d 1309, 1402 (7th Cir. 2000)). This is discussed in further detail, *infra* 7–11.

diminished where evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense"). It is the defendant's burden to prove prejudice when moving for severance, and the Fourth Circuit has described this task as "an uphill battle." *See U.S. v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008).

To that end, the Fourth Circuit has identified three instances where a defendant may be prejudiced by joinder that is otherwise proper under Rule 8(a)'s "same or similar character" language:

> (1) the jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated;
> (2) the defendant may be confounded in presenting defenses, as where he desires to assert his privilege against self-incrimination with respect to one crime but not the other; or
> (3) the jury may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition. As we view the record, we are concerned here with the latter form of prejudice.

*United States* v. *Foutz*, 540 F.2d 733, 736 (4th Cir. 1976). However, anchoring the Court's analysis is the well-accepted legal principle that limiting jury instructions—not severance—is generally the appropriate, "less restrictive" remedy to ameliorate prejudice. *Mir*, 525 F.3d at 357–58 (citing *Zafiro* v. *United States*, 506 U.S. 534, 539 (1993)).

## IV. ANALYSIS

Subsections (A) and (B) analyze the parties' joinder and prejudice arguments, respectively. The Court concludes (1) joinder is proper under Rule 8(a) because (i) the Coercion and Receipt Counts are of similar character, and (ii) joinder promotes judicial efficiency given the overlapping witnesses and evidence; and (2) the Defendant has not met his burden to show that any prejudice requires severance under Rule 14(a), as any risk can be cured by limiting instructions.

    **A.     Joined under Rule 8(a)**

        1.     <u>The Parties' Joinder Arguments</u>

The Defendant moves to sever the counts in the Superseding Indictment, contending that the alleged offenses are improperly joined under Rule 8(a). He argues that the two groups of charges—one concerning the alleged coercion of Jane Doe 1, and the other involving the receipt of videos depicting Jane Doe 2—share no meaningful factual or logical relationship. *See* Mot. Sever 4–5. In his view, joinder is improper because the offenses (1) occurred more than a year apart; (2) involve different minors, and (3) require distinct statutory elements of proof. *See id.* at 3–5 (citing *United States* v. *Rosenthal*, 2022 U.S. Dist. LEXIS 64090 (N.D. Cal. Apr. 6, 2022)).[2] Additionally, the Defendant contends that judicial efficiency benefits are minimally advanced by joinder because the offenses involve "largely different witnesses, overlapping only relative to the case agent investigating and collateral witnesses at the execution of the search warrant where electronics were seized." *Id.* at 10.

The Government disagrees, asserting that joinder is proper because the charges are factually and logically intertwined. Resp. Opp'n, ECF No. 56 at 4. The Government argues that the offenses stem from a single, ongoing investigation into the Defendant's sexual exploitation of similarly aged minors; rely on overlapping evidence, including digital media seized from his

---

[2] In *Rosenthal*, the court considered whether a Coercion offense should be joined with offenses related to Possession of Child Pornography based "solely on the 'same or similar character' prong of Rule 8(a)." *Id.* at *8. The two separate offenses occurred within the same month, but, as here, did not involve the same minor. *Id.* at *12. The court began its analysis by noting the Ninth Circuit does not follow the categorical joinder approach under Rule 8(a) and instead uses a "holistic multi-factor approach, which demands more than 'general thematic commonality' and instead looks at factors such as the offense elements, temporal proximity, evidentiary overlap, physical location of acts, modus operandi, and victim identities." *Id.* at *9 (quoting *United States* v. *Jawara*, 474 F.3d 565, 578–79 (9th Cir. 2007)). Employing these factors, the court held the offenses could not be joined, notwithstanding the temporal closeness and that the offenses shared the common element of the sexual exploitation of a minor, because there was no other factual overlap tying the two offenses together. *Id.* at **10–12. Accordingly, the court found joinder improper. *Id.* at *13. The Defendant argues that this Court should adopt *Rosenthal's* analysis and grant his motion to sever.

residence; and are temporally related, as the Defendant allegedly maintained sexually explicit communications with Jane Doe 1 near the time of the video underlying the Receipt charges. *Id.* The Government emphasizes that trying the counts separately would deprive the jury of the full context of the investigation and require duplicative testimony and evidence. *Id.* at 7.

In reply, Defendant cites *United States* v. *Gray*, 78 F. Supp. 2d 524 (E.D. Va. 1999),[3] and asserts that no logical or factual relationship justifies joinder. Reply, ECF No. 58 at 1–2. To illustrate his point, he further posits that, if the search warrant had instead led to the discovery of illegal exotic turtles, the discovery would not justify joinder because the offenses would share no "logical, nor factual relationship." *Id.* at 2.

2.    The Coercion and Receipt Offenses Are Properly Joined under Rule 8(a)

The Court finds that the Coercion and Receipt Counts are properly joined because the offenses are of similar character. Neither party cites a Fourth Circuit decision, published or unpublished, that discusses whether the Coercion Offense is the same or similar to the Receipt Offense. Instead, the Defendant principally relies on *Gray* and *Rosenthal*. *Gray* does little to bolster the Defendant's position, as that case concerned the joinder of two patently inapposite offenses (possessing child porn and unlawful access into a government computer). *Rosenthal* is a bit more helpful for Defendant's argument, in that it is factually analogous and considers many of the same factors in its "same or similar character" analysis that Fourth Circuit courts consider. *See supra* 3–4. However, *Rosenthal*, as a Ninth Circuit case, is not controlling for this Court. And, importantly, the Ninth Circuit limits its Rule 8(a) analysis to the four corners of the indictment. The Fourth Circuit's review is not so limited— courts in this jurisdiction may consider additional information, such as evidence at a pre-trial hearing on a motion to sever. *United States* v. *Hawkins*,

---

[3] In *Gray*, the Court severed child porn possession charges and unlawful access of a government computer charges, notwithstanding the fact that the pictures were discovered during an investigation into the computer charges.

776 F.3d 200, 208 n.4 (4th Cir. 2009) (comparing *United States* v. *Cardwell*, 433 F.3d 378, 386 (4th Cir. 2005), with *United States* v. *VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)).

This distinction is of great consequence. Indeed, *Rosenthal* held that "the barebones indictment" failed to justify joinder—and explicitly reasoned that "[t]he government may have been able to show the counts were of the same or similar character had they included more detail in the indictment." *Rosenthal*, 2022 U.S. Dist. LEXIS 64090 at *12. Some of the detail missing from the indictment—but otherwise available on the record—was the fact that "evidence for all counts was found on the cellphone collected from the defendant at the time of his arrest, and the evidence from the phone was analyzed by the same law enforcement witnesses." *Id.* at **11–12. However, the court did not consider this information in its joinder analysis because "none of these details were present in the indictment." *Id.* at *12 (citation modified). Thus, although the *Rosenthal* case concerns similar facts and weighs similar factors when assessing joinder, it is not persuasive authority since it explicitly ignored facts—all of which are present in the instant case—solely because they were not included in the indictment.

In the instant matter, the similarities linking the Coercion and Receipt Offenses include (1) the Defendant's alleged sexual exploitation of minors and (2) the offenses stemming from the same underlying investigation. The offenses are otherwise distinguishable in that they concern separate minors, punish separate specific actions, and occurred 12–18 months apart. Thus, the Court's inquiry turns on whether Rule 8(a) permits the joinder of two offenses that are linked only by their shared harm of sexually exploiting minors and a single investigation. The Defendant contends that the factual distinctions between the two offenses require a finding that joinder is improper. These factual distinctions would be dispositive had Rule 8(a) required that the joined offenses be the same. But it does not: instead, it permits joinder where offenses are merely "similar."

8

As an initial matter, several courts have found that offenses for solicitation and possession are categorically similar under Rule 8(a). *United States* v. *Hersh*, 297 F.3d 1233, 1242 (11th Cir. 2002) ("Collectively, the counts charge Hersh with child molestation and child pornography — which plainly represent acts of similar character involving extraordinary mistreatment of children."); *United States* v. *Reynolds*, 720 F.3d 665, 670 (8th Cir. 2013) ("The charges of enticement of a minor to engage in illicit sexual activities, receiving child pornography, and production of child pornography 'are of the same or similar character' because they show Reynolds' predisposition to abnormal sexual attraction and tend to rebut the claim that Reynolds was trapped into receiving child pornography."); *United States* v. *Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (joining Coercion, Child Porn Production, and Possession of Child Porn offenses, reasoning that they "share 'general likeness' in terms of the conduct and events alleged . . . .").

And while the Fourth Circuit generally employs a more fact-intensive Rule 8(a) analysis akin to the Ninth Circuit's, it has not explicitly rejected the categorical approach of other Circuits. Indeed, the Fourth Circuit has suggested it would embrace the categorical grouping of certain offenses as *per se* similar in specific contexts—so long as joined offenses are linked by a "natural inference." *See Cardwell*, 433 F.3d at 386 (citing *Stokes*, 211 F.3d at 1042) ("Even assuming *Stokes* is an accurate statement of law with respect to *gun* and *drug* counts, we see no similar inference categorically creating a logical relationship between *gun* and *murder-for-hire* counts when evidence of gun possession is discovered during a murder-for-hire investigation. While our conclusion might well be different if Hinson were the *hired murderer* - because of the natural inference that a murderer will use a gun to accomplish his deed - we see no similar inference linking gun possession to the *one hiring the murderer*.") (emphasis in original). Applying *Cardwell's* reasoning here supports a finding that the Coercion and Receipt Counts should be categorically joined, as both share the "natural inference that an [offender] will"—and in fact,

9

must—"use a [minor] to accomplish his deed." *Cardwell*, 433 F.3d at 386. Put simply, the Coercion and Receipt Offenses' shared exploitation of minors provides the logical connective tissue.[4]

Nonetheless, the outcome is the same even if the Court does not categorically group the offenses as *per se* similar because (1) the offenses were uncovered in a single investigation, and (2) the offenses are logically related, as evidenced by the fact that they both involve the sexual exploitation of minors. To be clear, the Fourth Circuit has explicitly rejected the notion that offenses uncovered in a single investigation may be joined absent a logical relationship. *Id.* ("A contrary holding would effectively read Rule 8(a) to allow limitless joinder whenever the charge resulted from the fruits of a single investigation."). But when there *is* a logical relationship between the alleged offenses, as here, joinder is proper. *Id.* at 387 (reasoning that the defendant's "expressed willingness to use the gun to protect himself from suffering the repercussions of his participation in the murder-for-hire scheme supplies a logical connection between the two counts"—justifying joinder).

The Defendant's exotic turtle hypothetical is unavailing. Joining offenses of soliciting sex from a minor and possessing exotic turtles would fall squarely in line with joinder that the Fourth Circuit rejected in *Hawkins*. 776 F.3d at 206–09. Therein, the court considered whether offenses of (i) carjacking, (ii) possession of a firearm in furtherance of a crime of violence, and (iii) firearm possession were properly joined. *Id.* at 206. The firearm used in the carjacking was a .357 caliber revolver (which is the firearm underlying the possession of a firearm in furtherance of a crime of violence offense), and the firearm underlying the firearm possession offense was a .9-millimeter pistol (".9mm"). *Id.* Notably, law enforcement uncovered the .9mm while "investigating an

---

[4] The Fourth Circuit has also acknowledged, albeit in another context, that Congress has noted a connection between child pornography and child abuse. *United States* v. *Toler*, 901 F.2d 399, 403 n.5 (4th Cir. 1990).

*unrelated incident* . . . which they believe[d] involved Hawkins." *Id.* at 202 (emphasis added). Hawkins argued that there was no link between these two offenses because the .9mm was discovered 17 days after the carjacking, and it was not used in the carjacking. *Id.* at 207. The Fourth Circuit agreed, reasoning that "the Government has proffered no evidence demonstrating a logical and close connection between the alleged carjacking and possession of a .357 caliber revolver on November 22, and Hawkins' possession of a .9-millimeter pistol on December 9." *Id.* at 207–08. Accordingly, the court held that the offenses were not of the same or similar character, reasoning that "the only connection we discern between firearm possession and carjacking counts is the appellant, Hawkins." *Id.* at 209.

Had the Government attempted to join offenses for illegal possession of exotic turtles and soliciting sex from a minor, such joinder would be explicitly proscribed by *Hawkins*—as the only connection "between [the exotic turtles] and [coercion] counts is [the Defendant]." *Id.* at 209. It would make no difference, on its own, if the turtles were discovered after investigating the solicitation offense. *See Cardwell*, 433 F.3d at 386. Here, however, there is a clear logical connection between the joined offenses in that they both involve the sexual exploitation of a minor. This logical connection, coupled with the fact that the offenses arose from a single investigation, satisfies Rule 8(a)'s "same or similar character" requirement. Moreover, joining these offenses promotes judicial efficiency because of the overlapping witnesses and evidence stemming from the shared investigation. Accordingly, the Court concludes joinder is proper.

**B.     Prejudice Under Rule 14(a)**

        1.     <u>The Parties' Prejudice Arguments</u>

The Defendant alternatively contends that, even if properly joined under Rule 8(a), the offenses "should be severed due to their prejudicial nature under Rule 14." Mot. Sever 5. He argues that his case contains similar concerns to those expressed in *Foutz*, where the Fourth Circuit

11

cautioned that joinder may cause a jury to cumulate evidence or infer criminal propensity. 540 F.2d at 736. Specifically, the Defendant argues that evidence related to the Receipt Counts would be inadmissible in a separate trial on the Coercion counts under Federal Rule of Evidence 404(b), as it would constitute improper "bad act" evidence. Mot. Sever 6 (citing U*nited States v. Lee*, 2015 U.S. Dist. LEXIS 181945 (M.D. Pa. June 2, 2015)).[5] Second, he argues that a joint trial would invite the precise type of prejudice described in *Foutz*—namely, that a jury might convict on both counts when it would not convict on either if the evidence were properly segregated, or might instead base its verdict on the perception of a "criminal disposition." *Id.* at 7 (citing *Foutz*, 540 F.2d at 736). Third, the Defendant asserts that joinder would impair his right to testify selectively, explaining that he "*could* wish to testify regarding the various 'knowing' evidentiary requirements for the Counts pertaining to receipt of child pornography but then wish to assert his Fifth Amendment right to not testify for the solicitation Counts." *Id.* at 8 (emphasis added). In support, he analogizes to *United States v. Gray*, 78 F. Supp. 2d 524 (E.D. Va. 1999), where the court found joinder improper because the inflammatory nature of a child-pornography counts risked prejudicing a jury's view of an unrelated computer-access offense.

The Government responds that the Defendant's concerns are speculative and fall short of the "strong showing of prejudice" required for severance under Rule 14(a). Resp. Opp'n 7. The Government maintains that the defendant identifies only the possibility—not the reality—of prejudice, and that appropriate limiting instructions can adequately safeguard against juror confusion or improper propensity reasoning. *Id.*

---

[5] The Court in *Lee* held that evidence of the severed counts, pursuant to Federal Rule of Evidence 404(b), "would not be admissible in a trial on the other counts, if the counts were not joined" and noted that "it would be psychologically impossible for a jury to disregard the evidence of child pornography in deciding Defendant's guilt of coercion and enticement, or vice versa." *Lee*, 2015 U.S. Dist. LEXIS 181945, at **6, 8. Notably, however, *Lee* found joinder proper under Rule 8(a)'s "same or similar" language—reasoning that the offenses are inherently similar. *Id.* at **3–4 (collecting cases).

12

In reply, the Defendant maintains that the prejudice here is concrete rather than hypothetical—again emphasizing the proposition that "[e]vidence of possession of alleged child pornography is not admissible in the solicitation trial, and vice versa." Reply 3. He also reiterated his position that he "*could* decide to testify" with respect to the possession Counts but not the solicitation Counts. *Id.* at 3–4 (emphasis added). Finally, the Defendant posits that limiting instructions will not cure prejudice in this case because "offenses involving allegations of the exploitation of minors[] can render any limiting instruction ineffective." *Id.* at 4.

### 2.  Any Prejudice Can Be Cured by Limiting Jury Instructions

Each of the Defendant's prejudice arguments fails. The Court addresses them in turn.

#### a.  *Some of the Evidence is Mutually Admissible*

The Defendant stresses that evidence of his alleged possession of child pornography is not admissible in the solicitation trial, and vice versa. The Court disagrees. Evidence of the Defendant's alleged prior bad acts underlying his Coercion Offenses would likely be admissible in his Receipt Offenses' trial pursuant to Federal Rule of Evidence 404(b)(2) as evidence of his intent, knowledge, and absence of mistake.

Evidence of other crimes, wrongs, or acts of a defendant is inadmissible "to prove that on a particular occasion the person acted in accordance with" the character or trait. Fed. R. Evid. 404(b)(1). However, such evidence is admissible when offered to prove a defendant's "intent, knowledge, . . . absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also United States* v. *Beahm*, 664 F.2d 414 (4th Cir. 1981).

In *Beahm*, the Fourth Circuit admitted testimony of prior similar acts as evidence of intent and absence of mistake, holding that such evidence is admissible when intent is a disputed element. 664 F.2d at 416–17; *see also United States* v. *Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009) ("Evidence that Defendant traveled abroad in order to engage in sexual trysts with underage boys

13

in Prague was, thus, admissible under 404(b) as 'proof of . . . knowledge, identity, or absence of mistake or accident' and intent with regard to his travel with his cousin and his former patient during which sexually explicit images of the boys were created and with regard to his collection of pornographic images of children.").

In the present case, the Defendant claims that the evidence of each crime would be inadmissible character evidence for the other under Federal Rules of Evidence 404(b)(1) because it would merely suggest that the Defendant acted in accord with previous wrongful conduct. Mot. Sever 7. However, similar to *Beahm*, the Defendant's Motion to Sever asserts that he may wish to dispute the knowing requirement in the child pornography statute. Mot. Sever 8 ("Mr. Ruggiero may choose to testify about the knowing elements required to be proved in the possession of child pornography allegations under Counts 7 through 11 but assert his right to remain silent regarding the solicitation allegations in Counts 1 through 6."). Therefore, evidence of the Defendant previously soliciting a minor for sex in violation of 18 U.S.C. 2422(b) appears to be admissible with respect to his "knowledge" or "absence of mistake" in violating 18 U.S.C. 2252(A)(2) and (b)(1) by receiving child pornography.

Not all evidence would be mutually admissible, but full mutual admissibility is not required; some evidentiary spillover "inheres in all joinder." *See United States* v. *Jamar*, 561 F.2d 1103, 1108 (4th Cir. 1977). Furthermore, careful jury instructions would mitigate any potential jury confusion of conflating evidence for the respective charges, highlighting the probative value of the evidence and limiting the resulting prejudice. *See Mir*, 525 F.3d at 357–58 (explaining how jury instructions are appropriate in most instances to mitigate concerns about conflating evidence); *see also Zafiro*, 506 U.S. at 539 ("Less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"). Accordingly, the Court finds that at least some of the evidence would be mutually admissible, which supports a finding that joinder is proper.

### b. *The Defendant's Fifth Amendment Argument is Unavailing*

The Defendant also claims prejudice on the ground that joinder may compromise his Fifth Amendment right to remain silent. Specifically, he claims he "may choose" to testify about the "knowing" *mens rea* required for possession of child pornography while remaining silent on the solicitation allegations. Reply 4. This hypothetical argument is speculative and fails to meet the threshold of actual prejudice required for Rule 14(a) severance for (1) lack of definitiveness, and (2) lack of a particularized explanation for why he can testify only with respect to the Receipt Offenses, but not the Coercion Offenses. The Court addresses each of these considerations below in turn.

First, the Defendant does not commit to testifying at trial for the Receipt Offenses; he states only that he "may" testify and that he "strategically[] could choose to testify in one [trial], but not the other." Mot. Sever 8. The Fourth Circuit has recognized that claims of prejudice are undermined when a defendant states only that he "may" testify. *United States* v. *Tyson*, 462 F. App'x 402, 407 (4th Cir. 2012) (finding no prejudice when the defendant stated he "may wish" to testify because, in part, the defendant's "desire to testify was not definite"). So too here. The Defendant does not commit to testifying but nevertheless implores the Court to sever the charges in the event he decides to testify later. The Court struggles to see prejudice in the face of such a nebulous proposition.

Second, the Defendant fails to provide sufficient details supporting his argument with respect to his Fifth Amendment Right against self-incrimination.[6] Under Fourth Circuit law, "a particularized showing must be made concerning the testimony the defendant wishes to give **and**

---

[6] As an initial matter, and as explained *supra* 12–14, even if the offenses were severed, the Defendant's testimony that he lacked the requisite *mens rea* required for the Receipt Offense would likely open the door for rebuttal evidence regarding the facts underlying the Coercion Offense pursuant to Rule 404(b)(2). This fact is of great consequence, as "the possibility of prejudice is greatly diminished where evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense." *Carmichael*, 685 F.2d at 910.

his reasons for remaining silent on the joined counts, so that the court can make an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interests favoring joinder." *Jamar*, 561 F.2d at 1108 n.9 (emphasis added). Conclusory, speculative or otherwise bare assertions do not meet this standard. *See United States* v. *Mace*, 852 F. App'x 746 (4th Cir. 2021). In *Mace*, the defendant stated only that he "may have wished" to testify to witness tampering allegations while remaining silent as to the possession of child pornography charges against him. *Id.* at 747. However, "[h]e never informed the court to what he would have testified or how that testimony would have been important." *Id.* This defect proved dispositive. The court held that "Mace failed to carry his burden to justify severance" because he did not make "a convincing showing that he ha[d] both important testimony to give concerning one count and strong need to refrain from testifying on the other." *Id.* (internal citations and quotations omitted).

Presently, the Defendant appears to articulate only half of the Fourth Circuit's demands in *Mace*. While he informs the Court as to the content of his potential testimony and explains its importance to his Receipt Offense defense, he fails to provide the same particularized showing with respect to his reasons for remaining silent as to the Coercion Offense. Instead, the Defendant broadly purports that, since the Coercion Offense is a "hands-on offense" and the Receipt Offense is a "mere possession" offense, he would be prejudiced if forced to testify regarding the former, akin to the defendant in *Gray*. The Court finds this case too far removed from *Gray*.

The defendant in *Gray* faced joinder of two wholly distinct offenses: possession of child pornography and unlawful computer access. Those offenses stood at opposite ends of inflammability, meaning their joinder posed a unique threat that is not present on the instant facts. Here, the Defendant is accused of coercing a child to engage in a sexual relationship and possessing child pornography. These offenses are a far cry from the mismatched prejudice presented in *Gray*, as they are comparably inflammatory. Indeed, the Defendant does not cite any authority to support

16

his proposition that these offenses meaningfully differ with respect to inflammability. Accordingly, the Court finds that these offenses are sufficiently similar with respect to inflammability, and joinder of similarly inflammable offenses does not pose the Fifth Amendment dilemma presented in *Gray*. *See Goldman*, 750 F.2d at 1225 (noting that there is no Fifth Amendment "dilemma" posed by testifying with respect to one charge and being silent with respect to another "where the balance of risk and advantage in respect of testifying is substantially similar as to each count").

### c. *Jury Instructions are Sufficient to Combat the Alleged Prejudice*

Finally, the Defendant argues that limiting jury instructions would be insufficient to cure the alleged prejudice inflicted by joinder. Mot. Sever 6–7; Reply 4.[7] However, Defendant cites only *Lee*, 2015 U.S. Dist. Lexis 181945 in support of his proposition. Mot. Sever 6–7. The Court finds *Lee* unpersuasive; Fourth Circuit case law is clear that jury instructions are sufficient to combat perceived prejudice. *See Mir*, 525 F.3d at 357–58 ("Less drastic measures, such as jury instructions, often will suffice to cure any risk of prejudice" from denial of severance) (quoting *Zafiro*, 506 U.S. at 539). Accordingly, the Court concludes that any potential prejudice resulting from joinder can be adequately mitigated through appropriate jury instructions.

### V. CONCLUSION

For the reasons detailed above, Defendant's Motion to Sever (ECF No. 50) is DENIED.

/s/ RCY
Roderick C. Young
United States District Judge

Date: October 20, 2025
Richmond, Virginia

---

[7] Notably, *Rosenthal*, which the Defendant cited in favor of his Rule 8(a) argument, found that "jury instructions informing jurors that they must consider each count separately would be sufficient to address any prejudice" introduced by joining coercion and receipt offenses. 2022 U.S. Dist. LEXIS 64090 at *13, n.2 ("The inevitable consequence of any joint trial is that the jury will become aware of evidence of one crime while considering a defendant's guilt or innocence of another crime, but such awareness does not mean a district court abuses its discretion when declining to sever counts.") (internal citations and quotations omitted).