**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Number: 4:24-cr39** |
| | ) | **Hon. Roderick C. Young** |
| **ANTHONY GEORGE RUGGIERO,** | ) | **Sentencing Date: March 17, 2026** |
| | ) | |
| **Defendant.** | ) | |

**MR. RUGGIERO'S POSITION ON SENTENCING
AND MOTION FOR A DOWNWARD VARIANCE**

The defendant, Anthony George Ruggiero, by and through his counsel Lauren Whitley and Carolyn V. Grady, respectfully submits this Position on Sentencing and Motion for a Downward Variance. Mr. Ruggiero has a number of objections to the Guidelines calculation as noted in the Pre-Sentence Report ("PSR"). Those objections are filed in a separate filing, ECF No. 113, filed simultaneously with this Position on Sentencing and Motion for a Downward Variance.

Mr. Ruggiero's current Guideline range is life. PSR ¶ 113. The PSR calculates a total offense level of 43, PSR ¶ 112, and a criminal history category of I, PSR ¶ 113. Even with Mr. Ruggiero's objections to the guidelines, his Guidelines range will remain life.

Mr. Ruggerio is asking this Court to sentence him to **300 months, or 25 years of active incarceration**. Mr. Ruggiero asks he be sentenced to 120 months, or 10 years active time, on each of Counts One through Six, with Counts Three through Six running concurrent to Counts One and Two. Mr. Ruggiero further asks that he be sentenced to 60 months, or 5 years, of active incarceration on Counts Seven through Eleven, with each Count running concurrently. Mr. Ruggiero further requests this Court recommend he receive mental health treatment during his period of incarceration, and during his supervision period, and that he be referred to a Bureau of Prisons facility as close to the Hampton Roads, Virginia area as possible. Finally, Mr. Ruggiero

1

asks this Court not to impose a fine pursuant to 18 U.S.C. §2259A as he is indigent and has no foreseeable income to pay such a fine.

300 months of active incarceration is a sentence sufficient, but not greater than necessary, to address the statutory sentencing factors under 18 U.S.C. § 3553(a), and to specifically address the seriousness of the government's evidence in this case and the nature of these convictions.

As Mr. Ruggiero's current Guidelines range is life, 300 months would be a downward variance, and Mr. Ruggiero specifically moves for such variance. As this motion for a downward variance is also based on the statutory factors under U.S.C. § 3553(a) Mr. Ruggiero incorporates the arguments herein for both his Position on Sentencing and his Motion for a Downward Variance.

## ARGUMENT

### I.    Nature and Circumstances of Offense

The offenses Mr. Ruggiero has been convicted of are very serious. While Mr. Ruggiero pled not guilty and maintains that plea through this sentencing process to appeal, the nature and circumstances of these convictions will weigh heavily on the Court. In mitigation of the government's evidence introduced at trial Mr. Ruggiero notes the following.

All of these offenses occurred during a discrete time period over a few years, roughly from 2021 to 2023. There is no evidence Mr. Ruggiero was involved, or implicated, in any other similar activities before the relatively limited time periods associated with this case.

Specifically, with regards to the CSAM offenses in Counts Seven through Eleven, these offense dates as listed in the Amended Superseding Indictment are all one date. The testimony at trial was the items had been downloaded on the same date, possibly as part of a zip file, and were a related series of videos and images involving Jane Doe 2. This Court does not have evidence there was a collection of thousands, or even hundreds, of images or videos, involving numerous

victims, on any devices associated with Mr. Ruggiero. With receipt, or possession, of CSAM the government's evidence is often of a defendant with a lengthy history of both seeking to obtain and access CSAM, and an extensive catalogue of CSAM, often ranging in the tens of thousands, or hundreds of thousands, of images and videos.[1] This was not the case here. The government's evidence here was of a discrete single date of download, involving a single set of a relatively small number of videos and images, all related to a single victim, Jane Doe 2.[2] Further, there is no evidence Mr. Ruggiero distributed, or shared CSAM, with other adults.

There is also no evidence that there were other victims outside the offenses of conviction here impacting Jane Doe 1 and Jane Doe 2. While this may seem insignificant given the circumstances presented to this Court for sentencing on these offenses, this does matter and further corroborates the very limited circumstances of these offenses.

Mr. Ruggiero pled not guilty to these offenses and Mr. Ruggiero now acknowledges the jury's verdict convicting him of all eleven counts. Of course, one of the consequences of Mr. Ruggiero's not guilty plea is that he has not received any Guidelines reduction for acceptance of responsibility Mr. Ruggiero would highlight specifically with regards to Counts Seven through Eleven and the victim in that case, Jane Doe 2, he did attempt to minimize the additional harm of playing government's evidence of the CSAM videos at issue during the trial by offering to stipulate to the videos as CSAM during the trial to reduce the harm to Jane Doe 2 and avoid the jury having

---

[1] The U.S. Sentencing Commission, in a 2021 report of sentencing data involving Non-Production Offenses of Child Pornography, reported that the offenses involved a median number of 4, 265 images, "with some offenders possessing and distributing millions of images and videos." Federal Sentencing of Child Pornography: Non-Production Offenses, United States Sentencing Commission (June 29, 2021) *available at bit.ly/43Qf4Hf (last visited March 3, 2026)* (analyzing sentencing data from fiscal year 2019).

[2] Mr. Ruggiero also does not receive a specific offense enhancement pursuant to U.S.S.G.§2G2.2(b)(4)(A) or (B).

to view the videos. While they weren't required to, the government did not agree to this stipulation, and the videos were played.

Also, as far as the evidence regarding Counts Seven through Eleven, there is no evidence that Mr. Ruggiero had any contact with Jane Doe 2, that he solicited the CSAM videos or images in question, or that he helped create the videos/images or influenced Jane Doe 2 in any way to create and share the videos and images. Nothing about that fact lessens the impact on Jane Doe 2, but for the sentencing this Court is engaging in, for the circumstances of this offense of conviction, and for Mr. Ruggiero, it is important to note the lack of evidence connecting him to these videos and images, and that there is no evidence connecting him to Jane Doe 2 besides the convictions themselves.

The circumstances surrounding Jane Doe 1, especially as relayed by her parents in their victim impact letters to the Court, are significant and tragic. No sentence this Court renders, ultimately, will bring the parents of Jane Doe 1 what any parents in their situation would want: the return of their daughter. It is this Court's obligation to take into account all of the 18 U.S.C. §3553(a) factors. While the nature and circumstances of the government's evidence of this offense is aggravating, the other factors this Court must consider under §3553(a) are mitigating in nature, specifically with regard to Mr. Ruggiero's history and circumstances, and the Court must consider all of these statutory factors in fashioning a sentence in this case.

## II.    History and Characteristics of Anthony Ruggiero

These convictions are not indicative of who Anthony Ruggiero is as a person.

Mr. Ruggiero was raised in a less than ideal home environment. While his childhood and

young adulthood do not exemplify "the worst of the worst" abuse and trauma this Court has seen in criminal cases, it was not an idyllic childhood and its impact on Mr. Ruggiero's development as a child and young adult was significant.

Mr. Ruggiero's father was physically and emotionally abusive, and the family shared little affection when Mr. Ruggiero was a child. PSR ¶ 97. Mr. Ruggiero recollects specific moments in his childhood where his father berated him for minor childhood achievements, such as catching a football, rather than celebrating them. This left Mr. Ruggiero seeking affection and more substantial relationships consistently throughout his young adulthood and adulthood. Mr. Ruggiero's childhood and young adulthood were also made more challenging by his diagnosis of ADHD. PSR ¶ 105. Mr. Ruggiero's personal history also likely contributed to his diagnosis with anxiety and depression as an adult. PSR ¶ 105. As his lifelong friend Donielle O'Connor notes in her letter to the Court, "Tony always struck me as someone who *needed* attention, not just wanted it, it felt as if any loving attention (friendship or otherwise) was soaked up immediately as if he needed it to survive." Defense Exhibit N. Clearly, Mr. Ruggiero's childhood and family dynamic impacted him throughout his life. In the many character letters submitted to the Court on behalf of Mr. Ruggiero it is clear that his friendships and relationships are important to him and that helping his friends and the community around him is a significant part of his life.

Despite the lack of support and love Mr. Ruggiero received as a child, he showed resilience and fortitude as an adult. Unlike many individuals who faced challenges growing up, including a lack of parental support, Mr. Ruggiero has had no interactions with the criminal system since he was 19 years old, and then he was only convicted of the equivalent of Virginia's underage

possession of alcohol. PSR is a significant part of his life at 89.[3] Mr. Ruggiero has a criminal history score of zero. PSR ¶ 90.

Mr. Ruggiero also served in the Army for almost 22 years. After struggling in college, Mr. Ruggiero entered the Army in 2003, PSR is a significant part of his life 109, where he attained the rank of E-7 Sergeant First Class during his service. PSR ¶ 109. Mr. Ruggiero achieved many awards during his career and was in good standing prior to this conviction. *Id.*; *see* Defense Exhibits A, B, C, D. A career of 22 years in any field is not a small thing. It is particularly impressive in the Army. This shows Mr. Ruggiero's work ethic and commitment to a productive path despite coming from an unsupportive family.

Mr. Ruggiero married, and had a child, with his wife Daiyanti Sundaralingam. PSR ¶ 100. Mr. Ruggiero and his wife, who goes by "Dee," have been married for 14-years. *Id.* Mr. Ruggiero's charges, and conviction, have obviously been the hardest on Dee and their child, both emotionally and financially. PSR ¶ 101. Mr. Ruggiero was the main source of financial income for the family, and Dee now has to rely on family to borrow money as her part-time employment does not sustain the family finances. *Id.* Mr. Ruggiero's son, herein referred to as M.R., as all children do, has struggled with his father's incarceration. *Id.* M.R. was grappling with mental health issues before Mr. Ruggiero's arrest, but these have worsened with his father's criminal system involvement. *Id.* Dee and M.R.'s letters to the Court are the most significant letters because they truly know him the best and because Mr. Ruggiero's role in their life was the largest. Despite the nature of his convictions, and the extensive sentence Mr. Ruggiero faces, both his wife and son stand in support of him. Mr. Ruggiero's son states he was an active father, working to provide care for him when he was having a hard time, and attending his sporting events and concerts. Defense Exhibit F. Mr.

---

[3] See WA Rev. Code §66.44.270.

Ruggiero's wife confirms his role in his son's life as a loving father. Defense Exhibit E. Mr. Ruggiero's absence is felt, and it will continue to impact his family for years as his sentence in this case will be significant.

Many of the letters submitted on behalf of Mr. Ruggiero show loved ones grappling with the Anthony Ruggiero they know: a caring, hard-working man, who is a good friend, a good father, and a good husband, and the contrast of these characteristics with the nature of Mr. Ruggiero's convictions. Mr. Ruggiero has forged numerous long-lasting friendships. Mr. Ruggiero's friends and colleagues, most who have known him for over a decade, describe a man who helps his friends, a man who is generous in his time and energy, and a man who works hard to provide for his family. *See* Defense Exhibits G through P. It is not a small thing that these friends, and Mr. Ruggiero's immediate family, continue to support him and have committed to helping him through this, even knowing the nature of these convictions. Many individuals convicted of criminal offenses, specifically offenses such as these, often lose their support systems in the process. This certainly speaks to the type of person Mr. Ruggiero is, and the quality relationships he has built so many of his loved ones continue to support him.

A few letters in particular highlight the strongest aspects of Mr. Ruggiero's character. For example, the letter from his friend, Donielle, who writes about meeting him as a teenager, and the close friendship they have maintained for almost 30 years. Defense Exhibit N. Donielle and her mother, who also submitted a letter, describe Mr. Ruggiero as a caring friend, and someone who is, understandably, very worried about his wife and son because of these convictions. Defense Exhibits I, N. The care Mr. Ruggiero exhibits to those in his close familial and friend circle is most evidenced by his care for Kathy Weeks, who served as his third-party custodian during his pre-trial bond status. Ms. Weeks reports that Mr. Ruggiero helped her in her garden, would cook for

the two of them, and otherwise assist her in daily activities. Defense Exhibit L. A home care nurse for Ms. Weeks called Mr. Ruggiero a "godsend," during his time at Ms. Weeks' home. Defense Exhibit J. Ms. Kagey noted Mr. Ruggiero did improvement projects around the house, including installing a small ramp to Ms. Weeks' back door as Ms. Weeks is wheelchair bound. *Id*. Mr. Ruggiero maintained Ms. Weeks' yard and garden and helped Ms. Weeks when she had falls. *Id*.

Mr. Ruggiero's friends and family know a man outside of the convictions that bring him before this Court. The numerous letters of support, and the experiences they communicate to the Court, are critical to see a complete picture of Anthony Ruggiero.

### III.    The Need for the Sentence Imposed

Another sentencing factor under 18 U.S.C. §3553(a) this Court will also likely closely consider in this sentencing is the need for the sentence imposed. A sentence of 300-months of active incarceration is a sufficient sentence to punish the offenses of conviction and promote respect for the law; deter criminal conduct; and prevent future crimes of Mr. Ruggiero.

First, 300-months is a significant sentence. It reflects the seriousness of the government's evidence in this case and provides just punishment. Mr. Ruggiero is 43 years old. He is not eligible, due to the nature of conviction, for many good time credit statutes and programs, such as the First Step Act.[4] Even serving the standard calculated minimum sentence of at least 85% Mr. Ruggiero will remain incarcerated until his mid-60s.

Also, regarding punishment, it is important to note the significant collateral consequences to these convictions outside of active incarceration itself. When released Mr. Ruggiero will be required to register as a sex offender for the rest of his life. Should he continue to reside in Virginia, Mr. Ruggiero will be categorized as a Tier III Sex Offender, the most serious categorization,

---

[4] *See* 18 U.S.C. §3632(d)(4)(D)(xxxvii).

requiring registration with the Virginia State Police every 90-days.[5] Mr. Ruggiero is also now a convicted felon, losing many of his significant civil rights as a result, including the right to possess a firearm.

For Mr. Ruggiero in particular, the most significant consequence, outside of active incarceration, is that this conviction has caused his separation from the Army, which is currently being processed as an other than honorable discharge. When this separation is complete, Mr. Ruggiero will have lost all benefits, including his retirement, medical insurance for himself and his family, and any future resources and income for disabilities associated with his career in the armed services.

Second, a 300-month sentence will also deter Mr. Ruggiero, and others, from committing similar offenses, and will protect the public from future crimes of Mr. Ruggiero. Mr. Ruggiero has already shown this deterrence, as he remained fully compliant on pre-trial release for these charges for almost 16 months. During that time there were no violations alleged or allegations of additional criminal conduct. Acknowledging the convictions that now exist, any argument about Mr. Ruggierio's risk of recidivism is countered by his very real actions in complying with pre-trial services, which imposed conditions similar to what he will have to comply with on supervised release, and his lack of additional criminal charges during his time on pre-trial release.

In addition, Mr. Ruggiero is technically a "zero-point offender." Individuals with zero criminal history points ("zero-point offenders") have considerably lower recidivism rates than all other offenders, including one-point offenders.[6]  Mr. Ruggiero fits within the 2023 changes to §

---

[5] *See* Va. Code §9.1-901; Va. Code §9.1-902; Va. Code §9.1-904.
[6] *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), at 5, 27, available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010.

4C1.1 which define "zero-point offenders" as those offenders with no criminal history points, including (1) offenders with no prior convictions; (2) offenders who have prior convictions that are not counted because those convictions were not within the time limits set forth in subsection (d) and (e) of § 4A1.2; and (3) offenders who have prior convictions that are not used in computing the CHC for reasons other than their "staleness". As such, he is extremely unlikely to recidivate, and more importantly, *will not* recidivate. The conviction itself is sufficient to ensure that he will never reoffend. Of course, Mr. Ruggiero's conviction bars him from receiving any Guidelines reductions as a zero point offender.

Finally, this factor regarding the need for the sentence imposed under §3553(a)(2) also requires this Court to consider the need for the sentence imposed to provide the defendant with educational or vocational training, medical care, or other correctional treatment. Mr. Ruggiero is not someone who will sit idly while incarcerated. As evidenced by his time in Northern Neck from November, he has been industrious, already completing 48 courses, which equates to 46 learning hours. Defense Exhibit Q, R. As noted, Mr. Ruggiero will also benefit from continued mental health treatment and counseling for his anxiety and depression, as well as continued medical care for his physical conditions. PSR ₱ 103, 104. A sentence of 300 months will provide extensive time for Mr. Ruggiero to receive in-depth mental health treatment, as well as sex offender treatment which will likely be imposed based on the nature of these convictions.

## IV.    The Need to Avoid Unwanted Sentence Disparities

The Judiciary Sentencing Information (JSIN) reports that of the defendants similarly situated as Mr. Ruggiero, with a criminal history category of I and a base offense level of 43, resulting in a Guideline range of life, the sentencing court varied below the low-end of the Guidelines **82% of the time**. JSIN specifically notes:

10

During the last five fiscal years (FY2020-2024), there were 74 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 74 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 303 month(s) and the median length of imprisonment imposed was 300month(s).

The sentencing data provided does not reflect the Commission's recommendation regarding the appropriate sentence to be imposed or represent the Commission's official position on any issue or case. Nor does the information provided reflect the Commission's position regarding the weight to be given, if any, to the above sentencing information in a court's determination of the appropriate sentence to be imposed.

If the court does consider the above sentencing information as part of its consideration of the factors in 18 U.S.C. § 3553(a) in imposing sentence, it should do so only after considering the properly calculated guideline range and any applicable departures provided for in the Guidelines Manual.

### Sentence Imposed Relative to the Guideline Range for Defendants in Selected Cell
Fiscal Year 2020-2024

■ Within Range    ■ Downward Departure or Variance    ■ Upward Departure or Variance    ■ §5K1.1 Substantial Assistance



**Note:** The figure includes the 78 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.

### Sentence Type for Defendants in Selected Cell (after excluding §5K1.1)
Fiscal Year 2020-2024

■ Defendants Receiving Imprisonment (In Whole or In Part)    ■ Defendants Receiving Probation or Fine Only



**Note:** The figure includes the 74 defendants reported to the Commission whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Total percentages displayed in the figure may not sum to 100% due to rounding.

The *Defendants Receiving Imprisonment* category includes defendants sentenced to a term of imprisonment (in whole or in part) and who received a commitment to the Bureau of Prisons. This category includes (1) defendants sentenced to a term of imprisonment only, with no additional conditions of community confinement, home detention or intermittent confinement (Prison Only) and (2) defendants sentenced to imprisonment and conditions of alternative confinement as defined in USSG §5C1.1 (Prison and Alternatives). This category includes, but is not limited to, Zone A, Zone B, or Zone C cases receiving prison with additional conditions of a term of community confinement, home detention, or intermittent confinement.

The *Defendants Receiving Probation* category includes defendants sentenced to a term of probation with or without a condition of community confinement, intermittent confinement, or home detention (Probation Only and Probation and Alternatives). This category also includes defendants who received no prison, no probation, and no time of alternative confinement as defined in USSG §5C1.1, but instead who received a fine and/or a special assessment (Fine Only).

### Average and Median Length of Imprisonment for Defendants in Selected Cell Who Received a Sentence of Imprisonment (excluding §5K1.1)
Fiscal Year 2020-2024

■ Average Length of Imprisonment    ■ Median Length of Imprisonment



**Note:** The figure includes the 74 defendants reported to the Commission (1) whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

*Average and Median Length of Imprisonment* reports the average and median term of imprisonment imposed in months for cases in which a term of imprisonment was imposed. Probation sentences are excluded. Any portion of a sentence that is an alternative confinement as described in USSG §5C1.1 is also excluded. Cases in which a sentence is imposed, but where the length is indeterminable, are excluded. When sentences are expressed as "time served" on the J&C, Commission staff uses the dates in federal custody to determine the length of time served when an defendant has been in custody the entire time. If the defendant has been in and out of custody, or the start date is unclear/missing, then the Commission assigns a value of one day as a minimal time served amount for these cases. In cases where the court imposes a sentence of life imprisonment, sentences are reported as 470 months, a length consistent with the average life expectancy of federal criminal defendants given the average age of federal defendants. Sentences of greater than 470 months are also reported as 470 months.

V.      **Motion for a Downward Variance**

Incorporating the arguments above, the Court should note two specific factors under 18 U.S.C. §3553(a) that further support a downward variance in this case: (1) the duplicative nature of Mr. Ruggiero's Guidelines in assessing specific offense level enhancements that are duplicative of other enhancements; and (2) Mr. Ruggiero's history and characteristics.

1. **Mr. Ruggiero's Sentencing Guidelines are not representative of the offense conduct as the Guidelines penalize Mr. Ruggiero twice under different aspects of the guidelines for two different categories of enhancements.**

Mr. Ruggiero receives a +2-level increase for all of the solicitation counts under §2G1.3(b)(3)(A) as the offense of conviction involved the use of a computer to "*entice, encourage, offer, or solicit a person* to engage in *prohibited sexual conduct with the minor… .*" U.S.S.G. §2G1.3(b)(3)(A) (emphasis added); PSR ¶¶ 26, 34, 42, 50, 58, 66. This language is identical to the *actus reus* element of the offense of conviction, as stated in the Amended Superseding Indictment, that Mr. Ruggiero "did unlawfully and knowingly use facilities and means of interstate commerce to *persuade, induce, entice, and coerce* an individual who has not attained the age of 18 years old…to engage in any sexual activity for which any person could be charged *with a criminal offense.*" Amended Superseding Indictment, ECF No. 90, pp. 1-3 (emphasis added). The only difference in the Guideline versus the element as outlined in the Amended Superseding Indictment and the statute is that the Guideline requires use of a computer. Mr. Ruggiero also already receives another +2-level specific offense enhancement for each of these counts under U.S.S.G. §2G1.3(b)(2)(B) as the offense involved "a participant otherwise unduly influenced a

13

minor to engage in prohibited sexual conduct… ." PSR ¶¶ 25, 33, 41, 49, 57, 65.[7] Again, this enhancement duplicates the element of the offense of conviction.

This duplication is significant because the seriousness of the offense of conviction has been incorporated into the base offense level for this Guideline, which begins at 28. A 28 base offense level is high, and even if Mr. Ruggiero was sentenced at the base offense level of 28 his Guidelines range would be 235 months to 293 months, applying all other calculations as they currently stand.

Mr. Ruggiero has his Guidelines increased by +4-levels for an element of the offense that is already addressed in the base offense level guideline calculation. Specific offense enhancements are designed to address unique aspects of a case that escalate the culpability of the specific offense of conviction. This is exhibited where Mr. Ruggiero's Guideline calculation shows calculates a +2-level enhancement for Jane Doe 1 being in his custody, care and control, *see* U.S.S.G. §2G1.3(b)(1)(B), and where he receives a +2-level increase for obstruction for Counts One and Three under U.S.S.G. §3C1.1. But it is not unique to this case the element of persuading, inducing, enticing, or unduly influencing a minor as articulated by the level increases in §2G1.3(b)(2)(B) and §2G1.3(b)(3)(A). The guidelines already address this offense characteristic as it is an element of the offense addressed in the 28 base offense level.

The commentary to the Guideline enhancement under §2G1.3(b)(2)(B) discusses the court considering "whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. §2G1.3(b)(2)(B), cmt. N.3(B). The government's evidence in this case is certainly reliant on Mr. Ruggiero's relationship with Jane Doe 1 to effectuate the necessary criminal act, but the influence in this relationship arises largely due to the custodial nature of the

---

[7] Mr. Ruggiero is simultaneously filing an objection to the PSR for this specific enhancement application to the guidelines in Counts One through Six.

relationship-something Mr. Ruggiero already receives a +2-level increase for that offense characteristic under §2G1.3(b)(1)(B). Again, this is, practically speaking, double counting enhancements.

Mr. Ruggiero also receives a +5 enhancement in two places for a "pattern of activity involving prohibited sexual conduct." Mr. Ruggiero receives a +5 under the Guidelines for Counts Seven through Eleven. U.S.S.G. §2G2.2(b)(5), PSR ¶ 74. This enhancement incorporates Mr. Ruggiero's offenses from Counts One through Six into the Guidelines calculation for Counts Seven through Eleven. Mr. Ruggiero also receives another +5-level enhancement for the same enhancement under §4B1.5(b)(1). PSR ¶ 85. The language of these enhancements indicates their duplication. U.S.S.G.§2G2.2(b)(5) applies when there is a "pattern of activity involving the sexual abuse or exploitation of a minor," and U.S.S.G. §4B1.5(b)(1) applies when there is a "pattern of activity involving prohibited sexual conduct," which of course in this case is the sexual abuse or exploitation of a minor. While Mr. Ruggiero's Guidelines should reflect this aspect of the offense of conviction, they should not reflect it twice.[8]

Absent the +4-level enhancement for these counts, leaving all other calculations the same, Mr. Ruggiero's Adjusted Base Offense Level would be 32, with a final Base Offense Level of 42 (with the +5-level increase for the grouping counts and the +5-level increase for the pattern of

---

[8] The Fourth Circuit has held it is not error to apply the +5 enhancement both as a specific offense characteristic and also under §4B1.5(b)(1) under the Career Offender and Criminal Livelihood section of the U.S. Sentencing Guidelines. *See United States v. Dowell*, 771 F.3d 162, 170-171 (4th Cir. 2014). The *Dowell* Court stated "[t]here is no question that the Guidelines provisions in question account for similar conduct," but reasoned the Guidelines intended such cumulative application of the enhancements and noted that the sections applying the enhancements served different goals. *Id.* Specifically, the *Dowell* Court noted the application of the +5 enhancement in §4B1.5(b)1), per the commentary, was to apply to those who "present a continuing danger to the public." *Id.* at 171. Mr. Ruggiero is not someone who presents a continuing danger to the public. This is demonstrated by his life before he was arrested on these charges, and after.

activity under §4B1.5(b)(1)), resulting in a guidelines range of 360 months to life  If this Court also considered the double counting for the +5-level enhancement for the "pattern of activity," and removes the +5-level enhancement under §4B1.5(b)(1) then Mr. Ruggiero's base offense level is 37, resulting in a Guidelines range of 210 months to 262 months. Mr. Ruggiero asks this Court to sentence him to 300 months, which falls between these two practical assessments of the double counting that are exemplified in his currently calculated Guidelines.

### 2. Mr. Ruggiero's history and characteristics do not support a life sentence.

Even assuming Mr. Ruggiero's guidelines as currently calculated are accurate at a life Guideline, the Guidelines are only one aspect of the sentencing factors this Court must consider in sentencing Mr. Ruggiero. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The guidelines cannot be treated as mandatory, or presumptive. *Gall v. United States*, 552 U.S. 38, 51 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *Id*. at 49-50, and explain how the facts relate to the purposes of sentencing. *Id*. at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.

Mr. Ruggiero has one prior criminal misdemeanor conviction from over 20 years ago, and no other criminal history. Mr. Ruggiero was compliant with pre-trial supervision for almost 16 months and has a proven history of living as a hard-working member of the armed services; a reliable friend and member of his community; and loving and supportive father and husband. All of these factors contradict any argument that a life sentence for these convictions is the appropriate sentence.

The United States Probation Office ("Probation") also notes factors that may warrant a sentence outside the Guidelines. PSR ⁋ 114. Probation highlights Mr. Ruggiero's lack of criminal

16

history, his service in the Army, and that there are significant collateral punishments including Mr. Ruggiero's status as a felon and sex offender.

## **CONCLUSION**

A life sentence is greater than necessary to accomplish the goals of sentencing in this case. A sentence of 300 months is sufficient to accomplish these goals, but not greater than necessary. Mr. Ruggiero further requests the Court order mental health treatment while he is in the Bureau of Prisons, and that he be referred to a facility as close to the Hampton Roads area as possible so he can maintain contact with his wife and son.

Respectfully submitted,
ANTHONY GEORGE RUGGIERO

By:       /s/

Lauren Whitley
Va. Bar No. 75562
Counsel for Anthony George Ruggiero
Office of the Federal Public Defender
Eastern District of Virginia
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0852
Fax (804) 648-5033
Lauren_Whitley@fd.org

      /s/

Carolyn V. Grady
Assistant Federal Public Defender
Va. Bar No. 30445
Counsel for Anthony George Ruggiero
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
(804) 565-0855 (direct)
(804) 800-4214 (fax)
Carolyn_Grady@fd.org

w

17