IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 4:24cr39 |
| ANTHONY GEORGE RUGGIERO, | |
| Defendant. | |

SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorneys Devon E.A. Heath and Peter Osyf, files this Position on Sentencing and hereby represents that it has reviewed the Probation Office's Pre-Sentence Report ("PSR") filed on February 10, 2026 (ECF No. 107) and that it does not dispute any of the factors or facts set out herein.

**Statutory Considerations**

A jury convicted the defendant, ANTHONY GEORGE RUGGIERO, of eleven counts: Counts One through Six for Coercion and Enticement of Child, in violation of 18 U.S.C. § 2422(b); and Counts Seven through Eleven for Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). The mandatory minimum for Counts One through Six of the superseding indictment is 10 years in prison and the maximum penalty is life in prison. The mandatory minimum for Counts Seven through Eleven of the superseding indictment is 5 years in prison and the maximum penalty is 20 years in prison.

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a PSR which detailed the offense of

conviction and the characteristics of the defendant. In calculating the offense level for the defendant, which is outlined in detail in the PSR ¶¶ 19 – 87, the defendant's total offense level is 46, but pursuant to Application Note 2 of Chapter 5, Part A, an offense level of 43 or more is to be treated as an offense level 43. Therefore, the total offense level is 43. This calculation includes enhancements for the following: Jane Doe 1 being in the custody, care, or supervisory control of the defendant, as a foreign exchange student in his residence. The defendant otherwise unduly influencing Jane Doe 1 to engage in prohibited sexual conduct, time and time again; utilizing multiple social media platforms to engage in sexual graphic conversations, share and request sexual photos, even after Jane Doe 1 left the defendant's home and was living an ocean away, escaping his hands on abuse, to persuade, induce, entice, coerce, or facilitate the travel of Jane Doe 1 to engage in prohibited sexual conduct. The defendant obstructing justice by deleting sexually graphic photos due to the investigation and asking Jane Doe 1 to lie or keep secrets knowing there was an investigation being conducted. Engaging in a pattern of activity involving the sexual abuse or exploitation of Jane Doe 1 and Jane Doe 2. Using a computer or interactive computer service for the possession, transmission, receipt, or distribution of material or for accessing with intent to view the material. Possessing two images and 36 videos, ranging in length from anywhere to 00:00:02 to 00:00:55 seconds, of CSAM of Jane Doe 2. Having 7 total units and a Chapter Four enhancement for the defendant being a repeat and dangerous sex offender against minors.

The probation officer also calculated a criminal history level for the defendant. The defendant has one prior conviction, Supply Liquor, Premises to Minor, at age 19 wherein he received zero points. A criminal history score of zero (0) establishes a criminal history category of I pursuant to U.S.S.G. Chapter 5, Part A.

As a criminal history category I defendant with an offense level of 43[1], the defendant's sentencing guidelines is Life.

## I.   Statutory Sentencing Factors under 18 U.S.C. § 3553(a)

The United States believes that the Guideline recommendation of life imprisonment is sufficient but not greater than necessary to comply with the purposes of sentencing enumerated in 18 U.S.C. § 3553(a). Prior to sentencing the defendant, the Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. In this case, the nature and circumstances of the offense, the defendant's history and characteristics, and the § 3553(a)(2) factors support a sentence of life imprisonment.

### A.   Nature of the Offense

The nature and circumstances of the defendant's offense should be viewed with the utmost gravity, for the implications of his conduct are far reaching, pernicious and irreversible. On August

---

1 The actual offense level is 46 but pursuant to Application Note 2 of Chapter 5, Part A, an offense level of more than 43 is treated as an offense level of 43.

17, 2021, Jane Doe 1 came to reside at the defendant's residence as a foreign exchange student, she was 15 years old at the time. Within weeks of her arrival, the defendant took advantage of his uninhibited access to Jane Doe 1, with him being her foreign exchange father and her living under his roof, and began sexually abusing Jane Doe 1 time and time again until she was medically hospitalized and required to leave the program, and return home to Spain due to her greatly diminished health. PSR ¶¶ 9 – 13.

By January of 2022 Jane Doe 1 needed to be hospitalized due to reoccurring seizures. She was admitted to the Children's Hospital of the King's Daughters (CHKD) where she was placed in a room that was monitored 24 hours a day. The staff at the hospital noticed something not right between Jane Doe 1 and the defendant and deemed it inappropriate given the nature of their relationship. Through the viewing cameras they had observed the defendant kiss her neck and lift her gown. While this matter was investigated, Jane Doe 1 initially denied suffering any sexual abuse and the investigation into the allegations was closed and unfounded. PSR ¶¶ 11 & 12.

Jane Doe 1 returned home to Spain with her father on February 3, 2022. Two weeks after returning home she was admitted to the Psychiatric Unit of the Maternity and Children's Hospital in las Palmas de Gran Canaria, as her health, while improving some, was still not better and she needed a wheelchair or a walking frame to walk. The Doctor in the hospital advised Jane Doe 1's parents that she had clearly suffered a shock and when they attempted to locate the reason for it the sexually graphic conversations between the defendant and Jane Doe 1 were discovered. Messages between them were found on Facebook, Snapchat, Instagram, and SMS. These conversations showed that even after Jane Doe 1 returned to Spain the defendant was still talking about sex and what a good time they had together. The defendant told Jane Doe 1 that if he was caught, he could go to jail for life. Shortly after the messages were discovered, Jane Doe 1

disclosed to her mother and professionals that the defendant first sexually abused her in September, shortly after she arrived and continued to do until she left. PSR ¶ 13.

As reflected in the victim impact statements provided by Jane Doe 1's parents, Jane Doe 1 continued to suffer the irreversible harm and damage that was caused by the defendant sexually abusing her time and time again. The defendant's offense conduct includes a pattern of coercing and enticing Jane Doe 1 to engage in sexually explicit conduct. This repeated harm is reflected in snippets of conversations that the United States presented in trial where the defendant would ask for sexually explicit photos of Jane Doe 1, talk about past sexual abuse he had engaged in with her and fantasize about future abuse. This harm was repeated again and again, even after she left his care and custody.

The sexually graphic messages discovered between the defendant and Jane Doe 1, in addition to her disclosure to medical professionals, and her mother, led the Spanish Authorities to open an investigation which led to the contacting of the Federal Bureau of Investigation ("FBI"). On June 12, 2024, a valid search warrant was served and executed on the defendant's residence. After being *Mirandized* the defendant asked if something had happened to Jane Doe 1. When advised that there was no information regarding her wellbeing, defendant stated, "she was unstable…mentally…" and that he was concerned that she was suicidal. PSR ¶¶ 14 & 15. Jane Doe 1 committed suicide in October of 2024. PSR ¶ 17.

Multiple electronic devices belonging to the defendant were seized and analyzed. Special Agent (SA) Desirae Maldonado found one of the defendant's electronic devices to contain CSAM that was downloaded by the defendant on February 22, 2023. This CSAM depicted Jane Doe 2, a minor who shares many similar characteristics with Jane Doe 1. The defendant received 2 images and 36 videos of CSAM. The combined length of all 36 videos is 638 seconds, or ten minutes and

38 seconds. All 36 videos were CSAM of Jane Doe 2. PSR ¶ 13.

The nature of the defendant's conduct of offense is highly reprehensible, severe, and egregious. Such conduct warrants a serious punishment and weighs in favor of a sentence of life imprisonment.

B.      History and Characteristics of the Defendant

The defendant's history and characteristics include his age, criminal history, personal and family history, and physical and mental health. The defendant is 43 years old with a criminal history category I, although he has a prior conviction for supplying liquor to minor(s). PSR ¶ 89.

The defendant's personal history offers no insight into why he has engaged in a pattern of sexual abuse. The defendant did report that his family was unaffectionate and his father was verbally and physically abusive at times, but there was no financial struggles, and while initially born in a "bad neighborhood" in Seatle Washington, by the time he was six or seven his parent's moved to a suburb and rented for a few years before purchasing a home in Greenbank, a rural unincorporated community in Whidbey Island, Washington. His mother was a professor, and his father was a homemaker. PSR ¶¶ 96 & 97.

The defendant graduated from high school, attended some college and then joined the Army on March 18, 2003. He continues to be in the Army, although, it is likely he will separated from the Army due to the conduct that is before the Court. He has been married to the same woman for 13 years, who was a doctor in Malaysia. They have one child, who identifies as male, and suffers from mental health conditions and has attempted suicide. PSR ¶¶ 98 – 101, 108, 109.

Turning towards the defendant's physical and mental condition, the PSR shows multiple health conditions. PSR ¶ 103 & 104. While the defendant's wife is concerned he is not getting the necessary treatment currently at the jail, nothing has been brought to the United States attention

and none of the health conditions listed in the PSR are anything that the Bureau of Prisons (BOP) cannot accommodate, treat, and provide dietary and or medical assistance for. The defendant reported that he has been in and out of mental health services throughout his childhood and military career but none of that has prevented him from graduating high school, joining the military and maintaining active-duty status with the Army and serving through multiple deployments. PSR ¶¶ 105 & 106. The defendant has no history of substance abuse. PSR ¶ 107.

Although the defendant only has one prior conviction, there is nothing that mitigates the offense conduct in the defendant's history and characteristics. Accordingly, this § 3353(a)(1) factor weighs in favor of the Guideline sentence of life imprisonment.

C.    Need for Just Punishment

The defendant's conduct is abhorrent. He abused his responsibility in providing a safe, supportive, and nurturing home environment that would facilitate a deep cultural immersion for Jane Doe 1 and instead preyed on her creating a sexually abusive relationship where time and time again he harmed her. The harm here is absolute. The defendant violated the trust of Jane Doe 1 and her family and used his position of authority, trust, and responsibility to torment a young girl. Jane Doe 1 was in the United States to study, learn, and enjoy all the things the United States has to offer. She wanted to be a doctor and do humanitarian work. Instead, she left the care and custody of the defendant a wholly different version of herself. A person who had been repeatedly violated physically and emotionally. So much so that her health deteriorated to a point so severe she had to be hospitalized. She was unable to walk on her own, control her bodily functions, and function on her own in simple day-to-day activities. The trauma that Jane Doe 1 endured at the hands of the defendant was so deep, so invasive, so persistent, that it ultimately overwhelmed her. It took her very short life.

The egregious facts of this case, which has irreversibly impacted Jane Doe 1, Jane Doe 2, and their families, is at the top of the government's main concerns. This defendant knew he was harming Jane Doe 1. He watched it first-hand. Did this stop him? The answer is a resounding no. Instead, he obstructed justice, advising her that he deleted pictures of them "having fun" due to the investigation and repeatedly reminded her of how much trouble he could get in if anyone knew. He continued to engage in sexually explicit conversations with Jane Doe 1 after she departed his care and custody. This defendant choose to take advantage of a program that is supposed to create safe and trusting environments for children and turned it into means to satisfy his sexual desires.

This defendant, by his wife's account, was a good father and husband; he is educated and selflessly served our country. But at some point, he decided to cast all that aside and become one of society's most abhorrent types of predators. What did this defendant do when he no longer had access to Jane Doe 1? He went online and found a substitute, downloading over ten minutes of CSAM of a little girl not dissimilar to Jane Doe 1. This behavior, as it should, remains absolutely unacceptable. There currently is, nor should there ever be, reason, justification, or excuse for this conduct. This factor, on its own, certainly supports a sentence of life imprisonment. The ultimate harms here are irreversible and warrants just punishment.

D.      Deterrence

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that these actions taken by the defendant are treated with the utmost seriousness. The public must look at what this defendant engaged in doing and know that such conduct commands a sentence of life imprisonment. Those inclined to consider committing crimes like these of the defendant must be made to pause and think about the consequences that follow.

As for specific deterrence, this defendant has not accepted responsibility for his conduct. He believed that if Jane Doe 1 kept this to herself it did not matter what he did to her. It did not matter what CSAM he had on his electronic device. It was not enough to harm Jane Doe 1 once; he needed to be able to continuously access her at his leisure. The United States believes this defendant is clearly intelligent enough to know this behavior is wrong. This defendant's guidelines are life imprisonment. An appropriate sentence.

E.      Need to Protect Society

A sentence of life imprisonment will further prevent the defendant from manipulating and molesting children. The defendant used a foreign exchange program and selfishly preyed on Jane Doe 1 with reckless abandonment as to how this would impact her for the self-serving goal of merely satisfying himself. The need to keep our society's children safe from this defendant is certainly a concern of the United States. Children need to be protected from this conduct and can be assured that this conduct will not happen again at the hands of this defendant while he is incarcerated for life. The defendant selfishly and repeatedly preyed on Jane Doe 1 and when his access to her was gone, he found Jane Doe 2. He abused a position of authority, manipulated his fatherly role in Jane Doe 1's life, gained her friendship and trust, and then exploited that trust repeatedly. Children have a need to be protected from behavior like this. Children need to be protected from this defendant.

F.      Avoiding Sentencing Disparities

There are no co-defendants or other sentences that warrant consideration in this case.

In sum, a sentence of life imprisonment reflects the seriousness of the offense, promotes respect for the law, provides just punishment for this offense, affords adequate deterrence to the defendant's criminal conduct, and protects the public from further crimes of the defendant.

## II.    Restitution

Title 18 U.S.C. § 2259 mandates restitution for any offense under Chapter 110, which includes the defendant's crimes for child sexual exploitation.   "A court may not decline to issue an order under [§ 2259] because of—(i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."   18 U.S.C. § 2259(b)(4) (2018).

The amount of restitution is the "full amount of the victim's losses.   18 U.S.C. § 2259(b)(1).   Section 2259(c)(2) defines the term "full amount of the victim's losses" to include:

> (A)  medical services relating to physical, psychiatric, or psychological care;
>
> (B)  physical and occupational therapy or rehabilitation;
>
> (C)  necessary transportation, temporary housing, and child care expenses;
>
> (D)  lost income;
>
> (E)  reasonable attorney's fees, as well as other costs incurred; and
>
> (F)  any other relevant losses incurred by the victim.

For "contact victim[s]," § 2259 "leaves to the district court the authority to determine [the victim's] losses, and includes—but is not limited to—the types of losses listed in subsection (b)(3)."  *United States v. Dillard*, 891 F.3d 151, 154, 158 (4th Cir. 2018).   "[W]hile the statute informs the court's analysis as to a proper amount of restitution; it sets no numeric limits on the amount of restitution that can be ordered."  *Id.*   In addition to counseling fees, a district court has statutory authority to award restitution in an amount that accounts for "'the long-term psychological effects [of the defendant's conduct on a contact victim, which] will require services that . . . should not be bored solely by [her] and her family.'"  *Id.* at 158.

In this case, the United States seeks restitution for Jane Doe 1 and Jane Doe 2. Under

§ 2259, the Court must order restitution, and under *Dillard*, the requested amount of restitution falls within the Court's statutory authority.

**Conclusion**

The United States respectfully request that this Honorable Court sentence the defendant to life imprisonment. The United States submits that such a sentence is sufficient but not greater than necessary to comply with the purposes of sentencing pursuant to Title 18, U.S.C. § 3553(a).

Respectfully submitted,

TODD W. BLANCHE
UNITED STATES ATTORNEY

By:  _____/s/_____
Devon E.A. Heath
Peter G. Osyf
Assistant United States Attorneys
United States Attorneys' Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
Devon.Heath@usdoj.gov
Peter.Osyf@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of March 2026, I electronically filed the foregoing

with the Clerk of Courts using the CM/ECF system, which will send notification of such filing

(NEF) to the following:

Carolyn V. Grady, Esq
Lauren Whitley, Esq
701 East Broad Street
Suite 3600
Richmond, Virginia 23219
E-mail: Carolyn_Grady@fd.org
        Lauren_Whitley@fd.org


And I hereby certify that I have e-mailed the document to the following non-filing user:


Christopher Zychowski
Senior United States Probation Office
U.S. District Courthouse, Suite 1150
701 East Broad Street
Richmond, Virginia 23219

_____/s/_____.
Devon E.A. Heath
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
Devon.heath@usdoj.gov