IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 4:24-cr-39 |
| ANTHONY GEORGE RUGGIERO, | |
| Defendant. | |

**REPLY TO RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION TO ALLOW AND IMPOSE THE COSTS OF PROSECUTION**

Comes now the United States of America, by counsel, and offers its reply to the defendant's response in opposition to its motion to allow and impose partial costs of prosecution (Document 114). The defendant presents five main arguments as to why the government's motion should be denied: (1) the Spanish officers were more than just chain of custody witnesses; (2) in any event, the defense did contest chain of custody; (3) the rush and expense to arrange the officers' appearance was due to the government's planning; (4) the government's motion has a punitive, chilling effect on the defendant's exercise of his right to go to trial; and (5) the defendant is indigent. But, as explained below: (1) had the defendant stipulated to chain of custody, the government would not have called those Spanish officers; (2) while the defense did question the officers about chain of custody, there was no evidence of any defects in the chain of custody; (3) the rush and expense to secure the officers' appearance was due to the defendant declining to stipulate to chain of custody; (4) the chilling effect argument could be applied to any defendant who goes to trial, but costs are nonetheless authorized by statute; and (5) a defendant with a six-digit positive net worth is not indigent for the purposes of this motion.

1

The government will begin with some supplemental factual background.  The defendant's sexual abuse of Jane Doe 1 was first brought to the FBI's attention through a law group that was suing the foreign exchange program through which Jane Doe 1 was placed in the defendant's home.  The FBI obtained the Spanish police's informal case file not through the Spanish police themselves, but through the law group.  The FBI obtained the informal file on January 22, 2024 and that informal file contained information from the extraction of Jane Doe 1's phone, but not the entirety of the extraction.  The government sought its first indictment against the defendant on June 10, 2024.  The defendant was arrested and made his initial appearance on June 12, 2024. In early July 2024, the government turned over its initial round of discovery to the defendant, which included the aforementioned informal Spanish file.  Meanwhile, the government had subpoenaed Instagram and Snapchat to obtain the communications between Jane Doe 1 and the defendant and those were likewise turned over to the defense in early July 2024.  At that time, the summer of 2024, Jane Doe 1 was still alive and the government intended to call her as a witness to narrate the course of communications revealed in the Snapchat and Instagram subpoena results.  There was no need for Jane Doe 1's phone at that time.

But tragically, Jane Doe 1 committed suicide in October 2024.  So on January 13, 2025, after working with the DOJ's Office of International Affairs, the government submitted an MLAT to the Spanish authorities for their formal case file.  Spanish authorities produced much of their formal file on June 26, 2025, but omitted the extraction of Jane Doe 1's phone.  When the government followed up in August of 2025 to inquire about Jane Doe 1's phone, Spanish authorities produced the phone extraction on October 23, 2025.  That same day, the government turned the full extraction over to the defense.  The government and the defense had been in discussions about stipulations prior to November 3, 2025.  It was on November 3, 2025, on a

2

request from the defense that the government type up and send over its proposed stipulations, that the government sent the formal, proposed stipulations. The government would not have sent those stipulations, including the stipulation to chain of custody and authenticity as to Jane Doe 1's phone, if the defendant had not indicated some willingness to consider entering into stipulations. Ultimately, though, the defendant rejected those stipulations on November 5, 2025. Two days later, on November 7, 2025, is when victim-witness specialist Darcel Sessoms was notified and began the process to get the three Spanish police officers the needed documents, authorizations, and travel arrangements to make it to the trial in Richmond by November 18, 2025.

As stated in the government's original motion, the government would not have called the three Spanish police officers as witnesses if the defendant had stipulated to chain of custody and authenticity. Instead, the government would have introduced the evidence obtained from Snapchat and Instagram, then called an agent to narrate the contents of Jane Doe 1's phone as corroboration of the evidence from Snapchat and Instagram.[1] This arrangement would have preserved the defendant's ability to object to messages by Jane Doe 1 on the basis of hearsay without costing the American taxpayers over $20,000 to bring three witnesses over from a Spanish territory. And while the defendant is correct that the government ended up asking at least one of the Spanish officers about more than chain of custody, that was only because the government learned when that Spanish officer arrived in the U.S. and met with the government that the officer had actually both observed the phone extraction being performed and reviewed the results from it. Since the officer was so familiar with the contents of Jane Doe 1's phone and

---

[1] The proposed stipulation included that the extraction of Jane Doe 1's phone was turned over to the main FBI case agent.

3

the government was being forced to call him as a witness anyway, the government did indeed question him about the contents of the phone. But, as noted above, the government would not have had the Spanish police narrate the contents of Jane Doe 1's phone if there had been a stipulation as to chain of custody and authenticity.

The defendant did question the Spanish officers about chain of custody, but the questions were in the nature of searching for a defect in the chain of custody. There was no evidence to that point of any defect in the chain of custody or authenticity of Jane Doe 1's phone and the defendant's questioning of the Spanish officers revealed none.

Despite the lack of evidence of any defect in the chain of custody or authenticity of Jane Doe 1's phone, on November 5, 2025 the defendant ultimately declined to stipulate to chain of custody. Of course, that is his right—a defendant has every right to put the government fully to its proof. The defendant's rejection of the proposed stipulations was after speaking with the government in the run up to November 3, 2025—the date the government provided the formal written proposed stipulations—about the possibility of stipulations. And two days later, on November 7, 2025, the government began the process to bring the Spanish officers to the U.S. on an expedited basis. Ultimately, the Spanish officers' testimony revealed no chain of custody or authenticity defects in Jane Doe 1's phone.

The defendant argues that the government is penalizing him for challenging the government's evidence, suggesting that doing so has a chilling effect on the defendant exercising his right to go to trial. But as the government noted in its original motion and in this reply, the defendant has every right to go to trial and put the government to its proof on each and every aspect of the government's case. The defendant has been fully afforded those rights here. But by statute, as explained in the government's original motion, the Court has the discretion to

4

impose the costs of prosecution against the defendant now that he has been found guilty. The defendant's argument about a chilling effect could be applied in any case where a defendant chooses to go to trial. But if that argument were accepted, it would mean that it would always be improper to impose the costs of prosecution against a defendant who went to trial, lest there be a chilling effect on the defendant exercising that right. The fact that Congress enacted a statutory framework for imposing the costs of prosecution means that there must be some cases where doing so is appropriate. The government respectfully submits that this is one of them.

Finally, the defendant repeatedly asserts that he is indigent. In support of that assertion, the defendant points out that the Public Defender was appointed to represent him. But courts have observed that "the standard for eligibility under the CJA is something less than indigency or destitution." United States v. Mena-Barraza, No. EP-13-CR-1726(18), 2015 WL 1980702, at *7 (W.D.Tex. Apr. 30, 2015) (collecting cases). And this defendant is far from indigent or destitute. For starters, his PSR shows a positive net worth of $168,174, which puts him in a much better position than many defendants who appear before the Court for sentencing (PSR, ¶ 110). This includes substantial equity in his house and two vehicles (out of a total of four) that are apparently lien free. Id. The defendant's PSR also reveals that he has been in the U.S. Army since 2003 and attained the rank of E-7 Sergeant First Class (PSR, ¶ 109). Given the length of his military service, the government understands that he should have a military retirement for which he should eventually be eligible. Further, the defendant contacted the government on June 9, 2025 asking for the cryptocurrency seed phrase off the cellphone the FBI had seized from him. The defendant said this would allow him to access his cryptocurrency wallet where he keeps his bitcoin. Of note, the PSR makes no mention of any cryptocurrency holdings. Even in the

absence of some additional assets possibly omitted from the PSR, a defendant with a significant positive net worth like this one does not count as indigent.

The government recognizes that whether to impose the costs of prosecution rests in the Court's discretion.  But for the reasons explained both in the original motion to impose costs and this reply, the government respectfully urges the Court that this case is an appropriate one in which to impose partial costs of prosecution.

Respectfully submitted,

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

By:        /s/ Kevin Hudson
Kevin Hudson
Assistant United States Attorney
Virginia State Bar No. 81420
Attorney for the United States
11815 Fountain Way, Suite 200
Newport News, VA 23606
Office Number: (757) 591-4000
Facsimile Number: (757) 591-0866
Email Address:  kevin.hudson@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 6th day of March 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notification of such filing (NEF) to all counsel of record.

By:     \_\_/s/ Kevin Hudson_____
Kevin Hudson
Assistant United States Attorney
Virginia State Bar No. 81420
Attorney for the United States
11815 Fountain Way, Suite 200
Newport News, VA 23606
Office Number: (757) 591-4000
Facsimile Number: (757) 591-0866
Email Address:  kevin.hudson@usdoj.gov